Case number 3-18-0204, in regards to the marriage of Terry Sadovsky, appellant by Pamela Davis-Gorkowski, and Claude Sadovsky, appellee by Gwendolyn Sturt. Thank you. Before we get started I would like to let you know that Justice Lutton is on this case. He will be a fully participating panel member. He has reviewed the briefs and will be taking part in the decision. Ms. Gorkowski? Good afternoon. May it please the Court, Counsel. In this case, the trial court entered upon the petitioners, upon the defendant's petition to reduce or terminate maintenance. The trial court set maintenance at zero. The court failed to consider the appropriate statutory guidelines. The court excluded evidence relevant to those guidelines and altogether abused its discretion and the appellant's entitlement to a new trial. In this case, there was a long marriage between the parties. The parties were married for 27 years. Claude, the husband, worked as an emergency room physician. Terry, the wife, she had some education in finance, but she chose to be a homemaker and raise the children and maintain the home. In carrying out these duties, she benefited her husband, Dr. Sadowski. The parties divorced in 2009. Judge Barron had a trial on the dissolution of marriage. His finding was that Dr. Sadowski earned an average of $275,000 per year in the years before the divorce. The court first required maintenance in the amount of $8,000 per month. Terry went on to college and received paralegal training. There was a motion to reduce maintenance in April 2011 and that was also heard by Judge Barron. He reduced maintenance to $6,500 per month, totaling $78,000 per year and stating it was anticipated that Terry would get a full-time job. She did get a full-time job as a paralegal in Naperville and now earns around $39,000 a year. Between 2012 and 2014, Dr. Sadowski worked simultaneously at several hospitals in southern Illinois. He had an S-Corp where his earnings were deposited and went through the S-Corp and then he received his salary from the S-Corp. The evidence shows that if you look at his personal, and then he filed personal tax returns, so the S-Corp filed a tax return and so did he personally. So the court allowed evidence of his personal tax return, which showed that he made $593,000 in 2012, $590,000 in 2013, and $533,000 in 2014. The court refused to consider the gross amount that was put into the S-Corp. He was the only employee of the S-Corp, his earnings went in there, and so the court refused to consider the evidence that the S-Corp's income in 2012 was $680,000, in 2013 $915,000, and in 2014 $867,000. The court allowed into evidence the fact that the S-Corp made a contribution to retirement funds for Dr. Sadowski. In 2014 in the amount of $240,000. The court excluded evidence that the S-Corp made a deposit of $240,000 into the retirement funds in 2013 and $60,000 in 2012. Then after, so during these three years there was significant income in Dr. Sadowski, worked at several hospitals. Then at age 57, after 2014, Dr. Sadowski decided to retire because of experiencing stress and stress-related symptoms. He testified that he had physical symptoms such as blinking lights, he had anxiety, and he had some stomach issues also. So he decided to retire in 2014, beginning of 2015. He didn't seek any medical care for his physical symptoms. He didn't seek any psychiatric care except for visiting the experts who testified at trial. He refused to consider medication. He did not look into any other kind of work or perhaps cutting his hours at the end of 2014. And then after hearing, Judge Garcia reduced the maintenance to zero. Part of our contention is that the trial court failed to consider the statutory guidelines that he's mandated to consider. Dr. Sadowski suggests that because this is on a review of maintenance rather than termination or modification of maintenance that he's not required to review all of the statutory guidelines and consider those in deciding whether or not to set maintenance at zero. But under 510 and 504, under 510, when modifying, terminating, or reviewing maintenance, the court must consider the 504 factors plus the 510 factors. Bloom is a Supreme Court case, and the court there, it was similar to this case, where the order that set the maintenance prior to the hearing issue said that the maintenance was reviewable. And that's like in our case, when Judge Barron set the maintenance at 6,500, he said it was reviewable. But as in Bloom, Dr. Sadowski filed a motion to terminate or modify maintenance, as in this case. And Bloom says that the 504 and 510 factors apply. The trial court did not have discretion to disregard the 504 and 510 factors. The court under 504 was to consider the income and property of each party, the supporting spouse's realistic present and future earning capacity, and the standard of living established during the marriage. Under 510, the court was required to consider the increase or decrease in Dr. Sadowski's income since the order setting maintenance at 6,500 in April 2011. And he was also required to consider the property acquired and currently owned by each party, and after the judgment. The judge stated that he would consider the 504 and 510 factors only if he found that Dr. Sadowski retired in bad faith. That's one of the factors under 510. That's an incorrect analysis. The court's supposed to consider all the factors, and it's perfectly clear. The trial court stated that Dr. Sadowski didn't have an obligation of support after the dissolution of marriage and that he could give his money to his girlfriend if he wanted to, even while asking to terminate maintenance. That's also an incorrect statement of law. The wife is entitled to maintenance and support after the marriage, and the standard is whether she can live in the standard of living that they enjoyed during the marriage. And so the court needed to consider all of the circumstances and refused to. The court failed to consider the disparity in property owned by each party at the time of the hearing. Based on Terry's financial affidavit, she had about $1.3 million in net assets. She had a $220,000 mortgage, but after taking that into account, her net assets were $1.3 million. At the time of the hearing, according to the affidavit, Claude had net assets of $1.8 million. He also had some interest in three properties in Hawaii. Were those properties considered part of the $1.8 million assets, or were they separate? The $1.8 million, on his affidavit, he lists the Hawaii properties, but he doesn't set forth their value. So they're not included in the $1.8 million. Correct. And his ownership interest or relationship to those properties was somewhat up in the air. Correct. He testified that he had a 50% interest in each of those properties, that Ms. King owned the other 50%. There was evidence that, at least by the time of the motion to reconsider, that Dr. Sadowsky had gone into Hawaii courts to try to remove Ms. King from the title. Okay, I don't want to sidetrack you too much. That helps me. Thank you. All right. And, well, Judge Garcia said whether, this is when the judge said that, and refused to hear evidence that Dr. Sadowsky, in fact, or cross-examination, that Dr. Sadowsky, in fact, paid the full price of those three properties and just put Ms. King's name on the property. That's when Judge Garcia said he wouldn't allow the cross-examination and Dr. Sadowsky could give his property away to his girlfriend if he wants to. Was anything of the value of the S courts included in that $1.8 million? $1.8 million includes all of Dr. Sadowsky's holdings at the time of trial. Property holdings, not counting the Hawaiian properties. By the time of trial, the S courts had been dissolved. Okay, so not included. Right. Well, as long as we're sidetracking here, the petition to terminate was filed in 2014, but decided in 2017. Did the doctor continue to pay $6,500 a month until 2017? He stopped paying in 2014. And just to clarify, the order that Judge Barron entered requiring maintenance of $6,500. That was reviewable in 2012, but it wasn't reviewed in 2012. Correct. If I recall. Correct. So then you're telling me that in 2014 the doctor just stopped paying? Correct. Filed the petition to terminate maintenance and stopped paying in 2014. And Judge Garcia concluded that was proper. One more question. From 2012 to 2014, did the doctor ever miss a payment of $6,500? I don't believe he did. And he was paying $78,000 a year while his S court was earning $1 million a year. And so he didn't ask to review maintenance and neither did my client. Okay. Thank you. And so this difference of at least, I mean, I'm going to call it $1 million. I think of at least $1 million. And when we evaluated it in our brief, we evaluated it very conservatively. We're assuming that he only owns half of the interest in those three properties. And we don't know the value of the Hawaiian property. So $1 million is a conservative number. So that existed five years after the divorce, even though Terry was allocated 58% of the assets and Claude was allocated 42%. So he was able to increase his assets significantly because of the significant sums he earned in 2012 to 2014. And he made those significant IRA deposits. So the court didn't address the fact that Dr. Sadowski had at least $1 million more in assets than Terry did. He didn't consider the disparity in the property. He said that Terry is trying to redistribute the assets awarded at trial and that she expected Claude to dip into his assets while she wasn't willing to dip into hers, her retirement accounts to support herself. The court stated that to compare the financial assets of the parties at this time, at the time of the trial, would amount to redistributing the assets allocated in the judgment by Judge Barron. And so his conclusion that for him to consider all the property being held by both parties at the time of the hearing, that his conclusion that it would be error for him to consider that because it would be revisiting what Judge Barron decided, that is in clear violation of the statutory factors that he's supposed to consider all the financial circumstances, all the property owned by the parties at the time of the hearing. That conclusion in itself warrants a new trial. Two minutes. Secondly, the court refused to consider the Dr. Zydowski realistic earning potential and to consider his full earning potential in 2012 to 2014. He refused to admit into evidence the S-Corp returns that showed those significant sums of $900,000 to $800,000 a year, I believe. $600,000 to $900,000. So in doing that, he refused to consider the realistic earning potential by Dr. Zydowski. And under 510, he specifically considered the increase or decrease in Dr. Zydowski's income since the time of the entry of the dissolution of marriage. Again, the trial court expressly refused to consider the evidence that it's supposed to consider under 504 and 510. That in itself is sufficient to warrant a new trial. The court refused to consider the standard of living established in the marriage, even though that's the standard that we're supposed to try to attain when possible, and that's another violation of the, disregarding the guidelines. The court made evidentiary errors in addition, which would require a new trial. The one I'm going to raise because I don't have much time is that there was a report written by Dr. Franichek that talked about the employment opportunities available to an emergency room physician who would like to leave the emergency room and take on other, because of stress. And so, Judge Garcia struck entire testimony of Dr. Franichek because the exhibit used at trial by Dr. Franichek did not match the exhibit given to counsel prior to trial. It's uncontested that the two exhibits, the two pages, had the exact same opinions, just in different order. The judge found that to be a 213 violation. That's a clear error. The substance of the affidavits was identical, they were just in different order. And so there is a situation where Judge Garcia refused to consider reasonable employment opportunities available to Dr. Sadowski. Time. We request a new trial. Thank you. Gwendolyn Sturck. May it please the court and counsel. My name is Gwendolyn Sturck and I represented Dr. Sadowski during the course of the trial. And I think there's some significant points that are missing from what would have occurred at the trial. At the trial, Dr. Sadowski had paid all of his support through the end of 2014. He had filed his motion at that point in time and he did not pay it going forward to answer the question. From 2015 forward, they had a petition for rule which was also denied. It is not subject to the appeal because the court felt that there had been a proper basis to review and set the maintenance at zero at the time that he was no longer employed and earning any money whatsoever. Let me just follow your train of thought. So in 2014, the doctor stopped paying support? He paid it all the way through the very end of the year. He paid the total year. And he retired in December, I think. Correct. And the petition was filed in November. That's correct. And then for the next three years, he didn't pay anything. That is correct. Okay, thank you. Okay. Without a court ruling. I'm sorry? Without a court ruling on his motion. Well, there had been several. It is not in the briefs, but if you look back through the history of it, there had been an issue where they tried to set the petition for rule for hearing and the court believed that he needed to hear. Judge Garcia wanted to hear the petition to modify prior to the petition for rule because he felt that that had been filed first in time and was not going to hear or address it and would award, very clearly, retroactive amount of maintenance if he found that the maintenance obligation should continue subsequent to that date. So that occurred before the hearing? In setting, just on temporary, when the court was setting the priority of what order he was going to hear the motions in. The petition for rule to show cause was not filed until well after Dr. Sadowski had filed his motion with regard to the review of the maintenance. So what was the basis for not paying the maintenance if there had been a rule on the motion? He was no longer employed. He was making zero dollars at that point in time. And the bulk of his estate was in retirement assets, and he had a pending petition before the court. But the contempt allegations or that petition for rule is not subject to any portion of the appeal. So the issue is when Judge Garcia rules, he rules retroactive to the end of December 2014 when the maintenance stopped. And he set the date. Is it interesting that Judge Barron stepped out of the case if he retired? Judge Barron had retired, and Judge Barron's cases then went to Judge Garcia. That is correct, yes. So at the time that the evidence was heard before the court, Collette had been an emergency room doctor. He had indicated to the court and had explained to the court that he was suffering from stress, that he had suffered from physician burnout. He had brought in his own expert, which is not outlined in any of the counsel's brief. He had an expert come in, Dr. Clower, who testified about emergency room physicians and the burnout that they experienced and what Dr. Sadowski had been experiencing. The evidence heard showed that Dr. Sadowski had not only the physician burnout, he had the stress, but he had had eight malpractice cases, and that that had caused him great significant stress over the course of his practice. The thing that was very significant in terms of what he did prior to the termination, which was a voluntary termination, which is difficult to overcome, because there had to be a finding of good faith. And at that time, he had testified very clearly and in detail as to four mistakes he had made, medical mistakes, which endangered individuals between July and November of 2014. Dr. Sadowski also indicated and testified that it would be a violation of his Hippocratic Oath if he continued to work, given the mistakes that he had made, specifically those mistakes in 2014 and all the other symptoms that he had been experiencing. The Hippocratic Oath said do no harm. One of the portions of the testimony of Ms. Sadowski's or Ms. Brown's expert, Dr. Franczak,